UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LAMAR FLUKER,                          :
      Plaintiff,                      :
                              :
v.                                      :      3:20cv179 (MPS)
                              :
LIEUTENANT KELLY, et al.,               :
      Defendants.                     :

## INITIAL REVIEW ORDER

On February 7, 2020, the plaintiff, Lamar Fluker, as an unsentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint, *pro se* and *in forma pauperis*, pursuant to 42 U.S.C. § 1983 against Lieutenant Kelly, Lieutenant Michaud, Correction Officer Nameth, and Lieutenant McNeil, all allegedly employees at Corrigan-Radgowski Correctional Center ("Corrigan"). Compl., Doc. #1.

In conducting an initial review of the complaint, the court noted that Fluker had not submitted a request for relief or a signature page to his seven-page complaint, and the court questioned whether Fluker's entire complaint had been filed with the court. Thus, on April 9, 2020, the court directed Fluker to file an amended complaint in compliance with Federal Rules of Civil Procedure 8(a)(3) and 11(a) by May 9, 2020. Doc. #8.

Fluker subsequently filed two motions for a 45-day extension of time to file an amended complaint. Doc. ## 9, 11. He attached an amended complaint to both motions, but only the amended complaint attached to the May 12 motion (Doc. #11) was properly signed.

In an order dated May 18, 2020, the court construed the amended complaint attached to the May 11 motion for extension of time as the operative complaint; however, as it was unclear from the motions for extension of time whether Fluker was requesting additional time to further

1

amend his complaint after consultation with ILAP, the court afforded Fluker two weeks to file an amended complaint if he intended do so. Doc. #13.

As Fluker has not filed a subsequent amended complaint, the court will review his amended complaint against Corrigan employees Lieutenant Kelly, Lieutenant Tosses, Correction Officer Augmon, Correction Officer Duquette, Correction Officer Santini, and Officer Michaud,[1] and Central Office Correction Officer Verdura for damages. Am. Compl., Doc. #14.

For the reasons that follow, the court will permit the Fourteenth Amendment procedural due process claim to proceed against Lieutenant Kelly, Officer Michaud, and Officer Verdura.

## I.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest.  *See Tracy v. Freshwater*, 623 F.3d 90, 101-102 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints.  A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a pro se complaint, a pro se complaint may not survive dismissal if its factual allegations do not

---

[1]  Fluker's original complaint had identified Michaud as a Corrigan Lieutenant. *See* Doc. #1.

meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.    ALLEGATIONS

The following allegations are taken from the amended complaint and considered to be true for purposes of this initial review.

Fluker was arrested and housed as a pretrial detainee at Corrigan. Am. Compl., Doc. #14 at ¶ 1. He was immediately escorted into a cell in the segregation unit by Lieutenant Tosses and Correction Officers Augmon, Duquette, and Santini. *Id.* at ¶¶ 1, 9-10. After about two weeks, Lieutenant Kelly and Officer Michaud informed him that he was being investigated for Security Risk Group ("SRG") affiliation based on his Facebook postings, including random photos he had shared with friends. *Id.* Correction Officer Verdura had contacted Corrigan after surfing the web and investigating Fluker's Facebook postings. *Id.* at ¶ 10.

In one specific photograph on Fluker's Facebook page, Fluker was shown wearing a Chicago Bulls hat and his son was wearing red jeans and a black shirt. *Id.* at ¶¶ 1-2. Lieutenant Kelly and Officer Michaud told him that the photograph showed affiliation with the Bloods street gang. *Id.* at ¶ 2. Fluker's son was actually wearing his high school colors for the Norwich Wild Cats, and Fluker was unaware that the Bloods street gang had trademarked the colors red and black and the Chicago Bulls logo. *Id.* at ¶ 3. Fluker tried to explain that he was pictured with his son and not a gang member. *Id.* at ¶¶ 3-4. They insisted that his use of a "K" for a "C" in spelling the word "Copy" on his social media page indicated his affiliation with the Bloods street gang. *Id.* at ¶ 4.

Fluker was placed in segregation for about a month and then moved to a special housing unit designed for violent gang members. *Id.*

When Fluker walked into the SRG housing, the inmates began yelling, "Who you with?" *Id.* Shortly thereafter, a note was slid under Fluker's cell door from people he did not know; the note asked Fluker who he was and what gang he belonged to. *Id.* at ¶¶ 4-5. Fluker told these inmates that he was in SRG housing by mistake, and that he suffered from a traumatic brain injury. *Id.* at ¶ 5. After the inmates demanded to know his affiliation, Fluker told them that it "was alleged" that he was affiliated with the Bloods. *Id.* The inmates told him he had to "rep" his affiliation, but he refused to do so. *Id.*

Fluker lived in fear for almost a year because the Bloods members hated him as he would not join them, and the Crips members hated him as DOC had labeled him a Bloods member. *Id.* at ¶ 7. Fluker only left his cell to shower and to take meals. *Id.* at ¶ 6. At some point, he was assaulted by his cellmate who was affiliated with the Crips. *Id.*

As a result of his experience, Fluker suffers from persistent migraine headaches and blurred vision. *Id.* at ¶¶ 7-8. However, Fluker has never posted anything on social media showing gang signs or stating his gang affiliation, despite DOC's erroneous use of his Facebook posting to affiliate him as an SRG member. *Id.* at ¶¶ 8-9.

### III.    DISCUSSION

The court construes the amended complaint as alleging violations of the Fourteenth Amendment's Due Process Clause and the First Amendment.

### A.    Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV.

#### 1.    Procedural Due Process

4

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985).  Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (per curiam).

Liberty restrictions on a pretrial detainee may not amount to punishment of the detainee, and a pretrial detainee who is placed in segregation for administrative reasons is entitled to "some notice of the charges against him and an opportunity to present his views." *Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Hewitt v. Helms*, 459 U.S. 460 (1983)). As long as the notice and opportunity to be heard requirements are met, the non-adversary proceeding is held "within a reasonable time following the inmate's transfer" to administrative segregation, "and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Hewitt*, 459 U.S. at 476 & n.8; *Taylor v. Comm'r of New York City Dep't of Corr.*, 317 F. App'x 80, 82 (2d Cir. 2009) (quoting *Hewitt*, 459 U.S. at 476 & n.8).

In the context of a liberty restraint imposed for disciplinary reasons, an inmate is entitled to the procedural protections—as set forth in *Wolff v. McDonnell*, 418 U.S. 538, 561-70 (1974)—of written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence. *See Benjamin,* 264 F.3d at 190.

Fluker has alleged that he was placed in segregation immediately after he arrived at Corrigan; that two weeks later, he was informed of being investigated for SRG affiliation due to his social media posts; that he tried to explain that his social media posts did not show gang affiliation; and that after a month of segregation, he was placed in SRG housing. Doc. #1 at ¶¶ 1-4. Construed broadly, Fluker's allegations suggest that he was placed in administrative segregation and then SRG housing without proper notice or an opportunity to present his views as required under *Hewitt*.[2] Doc. #1 at ¶¶ 1-5. *See Soto v. Walker*, 44 F.3d 169, 172 (2d Cir. 1995) ("The failure to provide informal review procedures within even as short a time as seven days in connection with a transfer into administrative confinement states a due process claim."); *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990) (finding that an administrative confinement of ten days without a hearing was an unreasonable delay).

Fluker's allegations are sparse with respect to the defendants' involvement in the SRG affiliation and placement decisions. Fluker cannot hold a defendant liable for an award damages without alleging a defendant's personal involvement in the asserted constitutional violation. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (a defendant's personal involvement in an alleged constitutional violation is a prerequisite to hold a defendant liable for an award of damages under § 1983.). A defendant's personal involvement in a constitutional violation can be shown by his direct participation in the violation or by a supervisory defendant's failure "to act on information indicating that unconstitutional acts were occurring[.]"[3] *Colon v. Coughlin*, 58

---

[2]  If Fluker's placement in segregation or the SRG housing unit are considered disciplinary measures, Fluker's allegations raise plausible claims of procedural due process violation under the standards of *Wolff*.

[3]The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of*

F.3d 865, 873 (2d Cir. 1995) (citation omitted). *See also Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020).

Construed broadly, Fluker's complaint suggests that Lieutenant Kelly, Officer Michaud and Officer Verdura were involved with Fluker's SRG affiliation and placement determinations. Lieutenant Tosses and Correction Officers Augmon, Duquette, and Santini are only alleged to have escorted him to segregation. Doc. #1 at ¶10. Although the extent of involvement by Lieutenant Kelly, Officer Michaud and Officer Verdura in the alleged procedural due process violation is not entirely clear, the court will permit this claim to proceed against Lieutenant Kelly, Officer Michaud and Officer Verdura for further development.

### B.      Substantive Due Process

A pretrial detainee may challenge a punitive or inhumane condition of confinement under Fourteenth Amendment substantive due process. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("A court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").

To establish a claim that conditions are punitive, a pretrial detainee must show that a condition was "imposed for the purpose of punishment," either directly with proof of such intent or indirectly by showing that the condition is not reasonably related to a legitimate governmental

---

*New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).   However, without further Second Circuit guidance on this issue, the court assumes for purposes of this ruling that the guidance outlined in *Colon* remains valid.

purpose, such as institutional security. *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017).

For a claim of deliberate indifference to conditions of confinement, a pretrial detainee must show that: (1) a condition posed "an unreasonable risk of serious damage to his health"; and (2) the official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed" such a risk. *Darnell*, 849 F.3d at 30, 35.

Here, Fluker alleges that he was subjected to a confinement that posed a risk to his safety and may have caused him to be assaulted while in the SRG program due to DOC affiliating him as a Blood member. He has, however, also alleged that he informed the other inmates that he had been affiliated with the Bloods. His allegations fail to suggest that his confinements in segregation and SRG housing were imposed for the purpose of punishment. Moreover, his allegations do not indicate that any of the defendants disclosed information about Fluker's alleged SRG affiliation to put him at risk in SRG housing. Further, Fluker's allegations do not plausibly raise an inference that any of the named defendants had any knowledge that he was subjected to a risk to his safety while in SRG housing. Accordingly, the court must dismiss Fluker's claims of substantive due process violation as not plausible.

## C.     First Amendment Violation

Fluker alleges that the defendants have acted to violate his First Amendment rights by retaliating against him based on his social media posts and pictures.

In order to establish a claim for unlawful retaliation against First Amendment speech, a plaintiff must prove that he engaged in speech activity that is protected by the First Amendment

and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected speech activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). A plaintiff must prove that he suffered an adverse action that would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).

The Supreme Court has recognized a First Amendment interest in posting on social media. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). However, "an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pilgrim v. Luther*, 571 F.3d 201, 205 (2d Cir. 2009) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)).

In prior decisions involving factually similar allegations, this court has previously held as plausible First Amendment retaliation claims based on an inmate's SRG affiliation and placement on the basis of social media posts showing gang affiliation. *See Kelly v. Santiago*, Doc. No. 3:18-cv-1796 (VAB), 2019 WL 3574631, at *4-6 (D. Conn. Aug. 6, 2019) (finding a plausible retaliation claim against prison officials who placed pretrial detainee in segregation based on social media posts); *Scozzari v. Santiago*, No. 3:19-cv-00229 (JAM), 2019 WL 1921858, at *4 (D. Conn. Apr. 29, 2019) (same). However, this court has recently dismissed similar First Amendment claims that challenged prisoner SRG affiliation and placement determinations based on social media content. *See Caves v. Payne*, 2020 WL 1676916, at *4 (D. Conn. April 6, 2020); *Wilson v. Santiago*, 2020 WL 1989135, at *2 (D. Conn. April 27, 2020); *Martinez v. Payne*, No. 3:20-CV-00231 (JAM), 2020 WL 3630422, at *4 (D. Conn. July 4, 2020).

9

After consideration of this more recent authority, the court concludes that Fluker has not stated a plausible claim under the First Amendment because allegations of prison officials' reliance on social media posts in determining an inmate's SRG affiliation and placement fails to satisfy the "causal connection between the adverse action and the protected speech," as required to state a valid First Amendment retaliation claim. *Caves*, 2020 WL 1676916, at *4; *Wilson*, 2020 WL 1989135, at *2; *Martinez*, No. 3:20-CV-00231 (JAM), 2020 WL 3630422, at *4. As this court noted in its recent decisions, "[t]he First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Caves*, No. 3:20-CV-15 (KAD), 2020 WL 1676916, at *4 (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)); *see also Martinez*, No. 3:20-CV-00231 (JAM), 2020 WL 3630422, at *4, and *Wilson,* No. 3:19-CV-1807 (JAM), 2020 WL 1989135, at *3 (same); *United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (same).

Fluker's allegations establish that the defendants used his social media posts as evidence of his gang affiliation. However, absent allegations that any defendant sought to punish or retaliate against Fluker for exercising his First Amendment rights, the complaint cannot plausibly allege a First Amendment retaliation claim.

## IV.   ORDERS

The Court enters the following orders:

(1) The case shall proceed on Fluker's claims of Fourteenth Amendment procedural due process violation against Lieutenant Kelly, Officer Michaud, and Officer Verdura. All other claims are DISMISSED without prejudice to Fluker filing an amended complaint to correct the deficiencies identified in this initial review order.

(2) The clerk shall verify the current work addresses for Lieutenants Kelly, Officer Michaud,

10

and Officer Verdura with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (Doc. #14) to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall mail a courtesy copy of the amended complaint (Doc. #14) and this Order to the DOC Office of Legal Affairs.

(4) The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months  (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re : Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

11

motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)  If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

_____/s/_____

Michael P. Shea
United States District Judge

**SO ORDERED** this 27th day of July 2020, at Hartford, Connecticut.

12