UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAMAR FLUKER,  )<br>    *Plaintiff*,  )<br>  )<br>v.  )<br>  )<br>LIEUTENANT KELLY, OFFICER  )<br>MICHAUD, OFFICER VERDURA,  )<br>LIEUTENANT McNEIL, and NICK  )<br>RODRIGUEZ,  )<br>    *Defendants*.  ) | 3:20-CV-00179 (SVN)<br><br><br><br><br>December 21, 2022 |

**RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Lamar Fluker, who at the relevant time was a pretrial detainee at Corrigan-Radgowski Correctional Center ("Corrigan") within the Connecticut Department of Correction ("DOC"), alleges that Defendants Lieutenant Kelly, Officer Michaud, Officer Verdura, Lieutenant McNeil, and Nick Rodriguez, deprived Plaintiff of his liberty without due process of law in violation of the Fourteenth Amendment in connection with his designation as a Security Risk Group ("SRG") member. Plaintiff claims his erroneous designation as an SRG member resulted in his placement in a restricted housing unit for several months, depriving him of certain liberties afforded to inmates who were housed in general population.

Presently before the Court is Defendants' motion for summary judgment, in which they argue primarily that Plaintiff failed to exhaust his administrative remedies and that, even if he did appropriately exhaust, Plaintiff has received all the process he was due.[1] Plaintiff opposes Defendants' motion, arguing that he exhausted the only administrative remedy that was available

---

[1] Defendants further contend they are entitled to qualified immunity, an argument the Court does not reach.

to him and that Defendants failed to meet their burden of showing there is no genuine dispute of material fact as to Plaintiff's due process claims.

Because there are no genuine issues of material fact concerning Plaintiff's only exhausted claim, Defendants' motion for summary judgment is GRANTED.

## I. FACTUAL BACKGROUND

### A. Restrictive Housing Placement & Investigation

On January 23, 2019, Plaintiff was arrested and brought into custody at Corrigan, where he remained until October 29, 2020.  Pl.'s L. R. 56(a)2 St., ECF No. 99, ¶ 4.  Whenever an inmate is brought into a Connecticut detention facility, an investigation is conducted to determine whether they are part of an SRG and should be housed in a Restricted Housing Unit ("RHU").  ECF No. 94-6 at 11:7–13.  The DOC's Administrative Directive ("A.D.") 6.14, of which the Court takes judicial notice,[2] defines an SRG as a "group of inmates, designated by the Commissioner, possessing common characteristics, which serve to distinguish them from other inmates or groups of inmates and which as a discrete entity, jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility."  According to Defendants, SRG status has two primary purposes: removing SRG inmates from the general population because they can present a heightened security risk to the DOC, and assisting inmates with disassociating from their affiliation and reintegrating into the general population.  Def.'s L. R. 56(a)1 St., ECF No. 91-2, ¶ 61.

---

[2] The Court may take judicial notice of the Connecticut DOC's Administrative Directives when examining motions for summary judgment dealing with issues of exhaustion. *See Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order).  Courts in this district regularly take judicial notice of these directives.  *See, e.g.*, *Chambers v. Johnpierre*, No. 3:14-cv-1802 (VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016); *Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003) (taking judicial notice of the Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, that establish the parameters of operation for Connecticut correctional facilities").

On January 24, 2019, Defendant Verdura, who worked as an SRG officer with the DOC central office, sent an email to Defendant Kelly at Corrigan about Plaintiff's status as a member of an SRG. Ans., ECF No. 83, ¶¶ 5, 7; ECF No. 94-1 at 4. Specifically, Verdura had conducted a search of Plaintiff's social media accounts and concluded that there were "multiple identifiers" on Plaintiff's Facebook page unique to SRG "Bloods," a gang that is known to operate in Connecticut. ECF No. 94-1 at 4. Verdura believed that the evidence she had found was sufficient to designate Plaintiff as an SRG member. Pl.'s L. R. 56(a)2 St. ¶ 40. Verdura noted that Plaintiff's favorite quote on his Facebook page was "it's a kold world Blood . . . show no mercy," *id.* ¶ 42, and that Plaintiff replaced the letter "c" with the letter "k" in various posts on Facebook, *id.* ¶ 41. Verdura also identified that Plaintiff shared on Facebook a video by "HaHa Davis" with the caption "when you not a real blood," *id.* ¶ 43, and noted that a photograph on Facebook depicted Plaintiff in Chicago Bulls attire, ECF No. 94-2 at 27. Finally, Verdura identified Plaintiff's use of language such as the words "u B Knowing," "soowoop," and "salute" as indicative of membership in the Bloods gang. Pl.'s L. R. 56(a)2 St. ¶ 44; ECF No. 94-2 at 22; ECF No. 94-6 at 59:12–15. Based on these posts and photograph on Plaintiff's Facebook page, Verdura concluded Plaintiff may be associated with the Bloods. Pl.'s L. R. 56(a)2 St. ¶ 41. Verdura also examined photographs of Plaintiff's tattoos and a disciplinary report dating back to one of Plaintiff's earlier periods of incarceration in 1995, but neither "alarm[ed]" her, so she made no mention of either the tattoos or the earlier disciplinary report in her submission to Kelly. ECF No. 94-6 at 19:13–16.

In this litigation, the parties disagree on the significance of the Facebook records Verdura identified. Defendants argue that Plaintiff used "k" instead of "c" in order to show disrespect for the Bloods' rival gang, the Crips. Pl.'s L. R. 56(a)2 St. ¶ 41. Plaintiff, on the other hand, argues that he used "k" as a sign of neutrality because Bloods use the letter "b," rather than "k," to replace

3

"c." *Id.* Next, Plaintiff admits he shared the HaHa Davis video, but contends it was a comedy video. *Id.* Finally, Defendants argue that the terms "soowoop" and "salute" are "identifier[s]" or "moniker[s]" associated with the Bloods, while Plaintiff denies that his Facebook reflects the use of "Blood gang identifiers." Pl.'s L. R. 56(a)2 St. ¶ 44. Plaintiff also notes that, during his prior periods of incarceration, including at Corrigan, he had never been designated as a member of the Bloods or any other gang, and had resided in general population units. *Id.* ¶ 79.

Upon receipt of Verdura's report, Defendant Kelly reported that Plaintiff would be placed in the RHU on "Administrative Detention Status" pending investigation of his membership in an SRG. *Id.* Therefore, within twenty-four hours of being placed at Corrigan, Plaintiff was transferred to the RHU. Pl.'s L. R. 56(a)2 St. ¶ 5. The parties generally agree that Plaintiff was informed that the reason for his placement in the RHU was due to a "profile review," though they disagree about whether this review rose to the level of an investigation. *See* Fluker Aff., ECF No. 100, ¶ 10 ("At the time of my confinement to the administrative segregation housing, I was told that it was due to a pending profile review."); Def.'s L. R. 56(a)1 St. ¶ 6 (stating that Plaintiff was informed that he was separated from the general population pending review and investigation of his profile); Pl.'s L. R. 56(a)2 St. ¶ 6 (contending Plaintiff was not told about an investigation until ten days later).

On February 4, 2019, Defendants Kelly and Michaud notified Plaintiff that a hearing would be conducted to determine if he should be designated as an SRG member. ECF No. 94 at 2. Plaintiff signed paperwork confirming that he had notice of the hearing, ECF No. 94-2 at 11, though he claims that no one fully explained to him that the hearing would determine if he should be designated as an SRG member. Pl.'s L. R. 56(a)2 St. ¶ 7. The form Plaintiff signed provided, in pertinent part: "The hearing shall be conducted by a hearing officer . . . . The hearing shall use

4

the same due process procedures listed in Administrative Directive 9.5, Code of Penal Discipline, regarding notification of hearing, representation by an advocate, witnesses, staff and/or inmate, hearing and appeal." ECF No. 94-2 at 11.³ Plaintiff acknowledges that he was shown documents prior to the hearing, but states that he was not informed that they would be used against him as evidence during the hearing. *Id.* ¶ 8. Plaintiff also notes that although the form he signed stated that the hearing would be held the same day that he signed it, the hearing did not actually occur until February 11, 2019. ECF No. 94 at 2; ECF No. 94-1 at 2. There is another form in the record dated February 4, 2019, that is signed with an illegible signature as "Reviewer"; this form contains check boxes indicating that Plaintiff declined to present witnesses and declined the services of an advocate. ECF No. 94-2 at 12.

      B.   The SRG Designation Hearing

Defendant McNeil presided over the hearing on February 11, 2019. Pl.'s L. R. 56(a)2 St. ¶¶ 46, 47, 50. In his role as hearing officer, McNeil travels to various prisons to hear matters. *Id.* ¶ 46. McNeil conducts multiple types of hearings, including long form hearings, which include SRG designation hearings; such hearings are not considered disciplinary hearings. *Id.* ¶ 47. At these hearings, McNeil asks the inmate whether he plans to call any witnesses or request an advisor. ECF No. 94-7 at 46:2–11. It is common for inmates not to request an advisor or call witnesses in connection with a long form hearing. Pl.'s L. R. 56(a)2 St. ¶ 53.

---

³ The version of Administrative Directive 9.5 that was in effect at the time of Plaintiff's hearing, which Defendants filed at the Court's request, *see* ECF No. 105, provides that, during the pre-hearing investigation, the investigator: must ensure the inmate receives the copy of the applicable report at least 24 hours prior to the hearing; shall determine if the inmate desires an advocate; and shall determine if the inmate wishes to call any witnesses at the hearing. A.D. 9.5, Section 24. A.D. 9.5 also provides that an inmate shall be allowed a minimum of 24 hours between receiving notice of a hearing and the hearing itself (Section 26); that an inmate or his advocate must be provided a copy or list of any physical evidence at least 24 hours before the hearing (Section 31(E)); and that an inmate should be allowed an opportunity to present witnesses (Section 27).

As part of Plaintiff's hearing process, McNeil, who was not involved in this matter prior to the hearing, was provided with the relevant posts from Plaintiff's Facebook account. *Id.* ¶ 50; ECF No. 94-7 at 19:3–5. At the hearing, Plaintiff was shown the evidence used against him. *Id.* ¶ 54. Plaintiff declined to call any witnesses and declined to request an advisor. ECF No. 94-2 at 12. Plaintiff did testify personally, and confirmed that the Facebook account, photos, and comments that appeared to be made from his account were his own. Pl.'s L. R. 56(a)2 St. ¶¶ 10, 54. Despite this acknowledgment, Plaintiff denied being affiliated with the Bloods. *Id.* ¶ 89. No other witnesses testified at the hearing.

Following the hearing, McNeil concluded that Plaintiff "poses a threat to the safety and security of the department if housed in general population." ECF No. 94-2 at 13. He reached this conclusion due to Plaintiff "maybe having some affiliation with the Bloods that normally could pose some kind of threat within the general population." ECF No. 94-7 at 57:1–9. This decision resulted in Plaintiff being formally designated as an SRG member. Pl.'s L. R. 56(a)2 St. ¶ 11; ECF No. 94-2 at 10.

### C. Plaintiff's Appeal of the SRG Designation Decision

Plaintiff timely appealed the SRG Designation decision on February 14, 2019, by filing an Inmate Administrative Remedy CN 9602 Form. Pl.'s L. R. 56(a)2 St. ¶ 12. In the form, Plaintiff set forth the timeline of being taken to the RHU a day after intake and being notified ten days later that he was under review for a Facebook SRG investigation. ECF No. 94-2 at 4. He noted that officers had shown him some photographs and comments, none of which, he argued, showed "any relation" to him being "affiliated with any gang." *Id.* Plaintiff disputed that he was an SRG member and explained that he replaced "c" with "k" to be neutral, rather than because he was a member of the Bloods; stated that he wanted a copy of the material that was used to determine his

6

SRG affiliation; and argued that "there should be someone at [those] hearings that actually knows about [those] groups" and that he believed that the correctional facility "will do whatever" to "keep [the] SRG beds filled." *Id.* at 6. Further, Plaintiff stated that, just because he is an African-American from Compton, California, "does not mean [he is] a gang member." *Id.*

The parties dispute the basis for Plaintiff's administrative appeal. Pl.'s L. R. 56(a)2 St. ¶ 13. Defendants claim that the "main basis" of Plaintiff's appeal was that he denied being affiliated with the Bloods gang, and that he disagreed with the evidence. *Id.* While Plaintiff agrees that was the "main basis" of the appeal, he argues it was not the sole basis. *Id.* Plaintiff claims he exhausted the grievance process for not only his claim of insufficient evidence, but also all of his procedural due process claims by pursing the appeal. *Id.* ¶ 31. Defendants dispute this contention, arguing that Plaintiff did not allege in the appeal that he was denied: (1) notice; (2) an opportunity to provide evidence or witnesses; (3) an advocate; (4) an opportunity to view the evidence that would be used against him; (5) sufficient time to prepare; or (6) a neutral hearing officer. *Id.* ¶ 14.

Defendant Rodriguez, in his capacity as acting District Administrator for the DOC, denied Plaintiff's appeal on March 20, 2019, and upheld Plaintiff's designation as an SRG member based on his affiliation with the Bloods gang. *Id.* ¶ 105. Rodriguez determined that there was "no serious due-process failure" in the designation and that "nothing could be found to support any modification of the Hearing Officer's decision." ECF No. 94-2 at 3. Rodriguez's decision was not subject to further appeal. *Id.*

    D.  <u>Plaintiff's SRG Status</u>

Once an inmate is designated as affiliated with an SRG, as Plaintiff was, that inmate is assigned an SRG status and must participate in up to five phases before reintegration. Pl.'s L. R. 56(a)2 St. ¶ 58. Phase one is the most restrictive and phase five is the least restrictive. *Id.* ¶ 59.

Plaintiff was initially assigned phase three status. *Id.* ¶ 60. Plaintiff attests, and Defendants do not dispute, that his designation as an SRG member subjected him to more restrictive confinement with substantially fewer privileges than provided to general population inmates, including longer and more frequent lockdowns, limited recreation and exercise time, restrictions on phone calls, restrictions on purchases and spending amounts at the prison commissary, limitations on outside visitors, denial of good time credit and other early release opportunities, restrictions on use of library materials, restrictions on religious services, restrictions on showers, and denial of the use of a hot pot. *Id.* ¶ 113. Plaintiff further attests that his designation as a Bloods member subjected him to "constant fear from threats and violence from Bloods and rival gang members," and to an assault perpetrated by his cell mate, a designated Crips member who was aware that the DOC had designated Plaintiff a Bloods member, on an unspecified date. *Id.* ¶¶ 111–12.

On November 11, 2019, Defendants completed an SRG Renunciation Form after Plaintiff completed phase five of the Security Group Membership Program at Corrigan. ECF No. 94-3 at 3–4. About ten days later, Plaintiff was removed from his designation. *Id.* at 2. Plaintiff has, however, continued to deny any "affiliation" with any gang. Pl.'s L. R. 56(a)2 St. ¶ 64.

## II.   PROCEDURAL BACKGROUND

Plaintiff initially filed this action *pro se* in February of 2020. In its Initial Review Order, the Court (Shea, J.) allowed Plaintiff's procedural due process claim to proceed, but dismissed Plaintiff's substantive due process claim. After the matter was transferred to the undersigned, counsel was appointed to represent Plaintiff. Counsel filed a second action on behalf of Plaintiff, No. 3:22-cv-246, naming Defendants McNeil and Rodriguez. The cases were consolidated, and Plaintiff filed an Amended and Consolidated Complaint in the present action. ECF No. 87. This complaint sets forth claims under 42 U.S.C. § 1983, alleging that Defendants unlawfully deprived

Plaintiff of his liberty without due process of law, in violation of the Fourteenth Amendment.[4] Following that filing, Defendants moved for summary judgment.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the moving party's burden to show there are no disputed material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by pointing out an absence of evidence to support the non-moving party's case. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). If the moving party demonstrates there are no disputed issues of material fact, the burden shifts to the non-moving party to rebut this showing through introduction of "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). When examining the record, "the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

---

[4] Counsel for Plaintiff confirmed at oral argument that Plaintiff is pursuing only procedural due process claims, and not substantive due process claims, since the substantive due process claims were dismissed by Judge Shea in the Initial Review Order entered July 27, 2020. ECF No. 15.

9

## IV. DISCUSSION

Defendants advance multiple grounds as to why they believe they are entitled to summary judgment.[5] Specifically, they argue: (1) Plaintiff failed to exhaust all the administrative remedies available to him; (2) even if all remedies were exhausted, Plaintiff received all procedural process he was due; and (3) even if he did not receive appropriate process, Defendants are entitled to qualified immunity. The Court addresses each issue in turn.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") mandates that incarcerated plaintiffs must exhaust all administrative remedies available to them before filing a claim under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," meaning that plaintiffs must exhaust all available remedies "in compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The requirement of exhaustion of administrative remedies serves "two main purposes." *Id.* at 89 (addressing exhaustion requirements under the PLRA). First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Id.* (cleaned up). Second, exhaustion promotes efficiency because "[c]laims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

Although a plaintiff "need not specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court, he is required to give notice to the defendants about the factual basis of his claims." *Edwards v. Melendez*, 832 F. App'x 50, 54 (2d Cir. 2020)

---

[5] In their briefing, neither Plaintiff nor Defendants make arguments directed specifically at any singular Defendant. Rather, both sides treat all Defendants as one singular entity for purposes of summary judgment. Thus, the Court will do the same in this decision.

10

(summary order); *Demuth v. White*, No. 9:18-CV-915, 2020 WL 1030649, at *4 (N.D.N.Y. Mar. 3, 2020) (a plaintiff's claim may be "unexhausted" when the plaintiff "fails to fairly raise [their] claims in the grievance"). To properly exhaust a claim, "a prisoner must allege facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures." *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order) (internal quotations omitted). If a plaintiff does not provide such description or notice, correctional officials are not afforded the "opportunity to address complaints internally," which Congress has required before a plaintiff can pursue a federal case. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Here, the DOC's Administrative Directives set forth the specific guidelines an inmate must follow if they wish to raise a claim as to any issue. Pl.'s L. R. 56(a)2 St. ¶¶ 17–18. In order to challenge an SRG designation, an inmate is required to comply with Administrative Directive Section 9.6(9). There is no dispute that Plaintiff properly filed a grievance under Section 9.6(9). *Id.* ¶ 21. Instead, the parties dispute precisely what issues Plaintiff's Section 9.6(9) grievance raised. Plaintiff argues his grievance set out two separate legal theories, both falling within the general ambit of a procedural due process claim. First, Plaintiff claims he was not afforded the actual process to which he was entitled, such as the ability to call witnesses and review the evidence to be used against him. Second, Plaintiff contends that the evidence relied upon by the hearing officer was not sufficient to sustain the finding that he was a member of an SRG. As both of these claims constitute violations of Plaintiff's procedural due process rights, *see Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985), the Court will refer to the former claim as the "Insufficient Process" claim, and the latter as the "Insufficient Evidence" claim for purposes of clarity.

In examining the exhaustion issue, the Court must determine whether the information contained in Plaintiff's administrative remedy form was adequate to put Defendants on notice of Plaintiff's claims, such that they had the opportunity to correct any potential errors. The Court considers Plaintiff's two claims in turn.

*1. Exhaustion of the Insufficient Process Claim*

Plaintiff first alleges the SRG hearing was procedurally defective, in violation of the Fourteenth Amendment. Defendants argue that Plaintiff's appeal of his SRG designation did not properly put them on notice that he was appealing the procedures employed before and during the hearing. The Court agrees, and therefore finds that Plaintiff has not properly exhausted the Insufficient Process claim.

Specifically, Plaintiff's administrative remedy form fails to provide enough detail regarding the "factual basis" of the alleged defectiveness of the hearing process, so as to put the Defendants on notice of the alleged wrong. *Edwards*, 832 F. App'x at 54. The only contents of the appeal form that at all suggest dissatisfaction with the procedure of the hearing were those statements that "there should be someone at [those] hearings that actually knows about [those] groups" and that Plaintiff wanted a "copy of what they used to determine [his] affiliation" so that he could send it to "the courts." ECF No. 94-2 at 6. With respect to Plaintiff's claim that he wanted a copy of the evidence used to determine his affiliation, Plaintiff admits that he was shown the supporting documents in advance of the hearing, Pl.'s L. R. 56(a)2 St. ¶ 8, as A.D. 9.5 requires. *See* ECF No. 105 at 19. His request for copies of the documentation does not suggest that he was deprived of an opportunity to review the evidence before the hearing; rather, he explicitly requested the documentation to pursue *future* litigation in "the courts." This request would not have put Defendants on notice of any purported lack of opportunity to review evidence *before* the

hearing. Plaintiff's claim that a witness with expertise should have testified is more properly assessed under the Insufficient Evidence claim, discussed below.

In sum, while Plaintiff's administrative grievance expressed some general dissatisfaction with the hearing process, it is clear that Defendants were not provided sufficient notice of the alleged procedural deficiencies Plaintiff now asserts, such that they could have attempted to remedy Plaintiff's complaints through the administrative process. For instance, the grievance does not suggest that Plaintiff was deprived of an opportunity to be heard, denied an advocate, or otherwise provided with an unfair procedure. Accordingly, Plaintiff failed to properly exhaust the purely procedural portion of his due process claim as required by the PLRA.[6]

*2. Exhaustion of the Insufficient Evidence Claim*

In addition to the Insufficient Process claim, Plaintiff believes that his SRG appeal challenged the sufficiency of the evidence relied upon to designate him a member of an SRG. Specifically, he argues that he "challenged the decision itself, indicating that the evidence produced at the hearing was not sufficient enough to designate him." ECF No. 98 at 13. Defendants admit that the "basis of the claim" in Plaintiff's SRG appeal was that he "disagreed that the evidence used . . . indicated that he was a member of or affiliated with the Blood gang." ECF No. 91-1 at 12. Defendants do not seriously dispute that Plaintiff's Insufficient Evidence claim is fully exhausted.

---

[6] Even if Plaintiff had exhausted this claim, it would still fail, as Plaintiff was afforded all the process he was due. The Second Circuit has held that pretrial detainees are entitled to the procedures set forth in *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), when placed in administrative segregation. *See Taylor v. Comm'r of N.Y.C. Dep't of Corr.*, 317 F. App'x 80 (2d Cir. 2009) (summary order). Thus, before being designated as an SRG member and placed in the RHU, a pretrial detainee is entitled to "receive some notice of the charges against him and an opportunity to present his views." *Hewitt*, 459 U.S. at 476. The record reveals that Plaintiff received "some notice" through the hearing notification form that he signed. ECF No. 94-2 at 11. Plaintiff also admits having been given an opportunity to present his views at the hearing, through his own testimony. Pl.'s L. R. 56(a)2 St. ¶ 54. Thus, Plaintiff received all process he was due.

It is clear that Plaintiff provided "enough information" to ensure that facility administrators were notified and given the opportunity to "take appropriate responsive measures" with respect to his Insufficient Evidence claim. *See Singh*, 460 F. App'x at 47 (citing *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)). In the Inmate Administrative Remedy Form, Plaintiff made numerous statements suggesting that he believes that the designation was based on improper or insufficient evidence. Plaintiff submits that "the judge stated that there would have to be something tying me or show me involved in gang activities in order to affiliate me and there is not." ECF No. 94-2 at 6. He further asserted, "I have no gang tats or any other links to any gang, they are doing this without any proof or evidence as if our lives don't matter, could you please look into what they've done to me." *Id.* Plaintiff makes it clear that he is dissatisfied with the evidentiary basis that the hearing officer used to arrive at his SRG determination.

As Plaintiff provided a "specific description of the problem" that alerted the administrators of the appeal and provided them "time and opportunity . . . to address the complaint internally," *Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009) (quoting *Porter*, 534 U.S. at 524–25), Plaintiff properly exhausted the Insufficient Evidence part of his due process claim, and the Court will examine the merits of this claim below. *See Ortiz v. McBride*, 380 F.3d 649, 663 (2d Cir. 2004) (where plaintiff has exhausted some but not all of his claims, the court should dismiss the unexhausted claims while allowing the exhausted claims to proceed).

B. <u>Insufficient Evidence Claim</u>

Having found that Plaintiff has adequately exhausted his Insufficient Evidence Claim, the Court now turns to the merits of this claim. One of the "core liberties" protected by the Due Process Clause is the "liberty from bodily restraint." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001) (citing *Youngberg v. Romeo*, 457 U.S. 307 (1982)). In order to prove a claim for

14

violation of his right to due process, Plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz*, 380 F.3d at 654.  Here, the parties do not dispute that Plaintiff possessed a liberty interest in remaining with the general prison population, and the Court agrees.  *See Lewis v. Cook*, No. 3:19-cv-01454 (JCH), 2021 WL 4477392, at *11 (D. Conn. Sept. 30, 2021) ("[P]rocedural due process requires that pretrial detainees can only be subjected to segregation or other heightened restraints if a predeprivation hearing is held to determine whether any rule has been violated.").  Thus, the only remaining question is whether Plaintiff received the process he was due, specifically, whether the evidence presented was sufficient to designate him an SRG member.

Initially, despite Plaintiff admitting that the hearing in this matter was not a disciplinary hearing, Pl.'s L. R. 56(a)2 St. ¶ 48, Plaintiff nevertheless argues that the hearing resulted in punitive measures being taken such that Plaintiff was entitled to the same protections as if the hearing had been a disciplinary hearing.  ECF No. 98 at 18.  Defendants, on the other hand, argue that Plaintiff was subject to a "long form classification hearing" and not a disciplinary hearing.  ECF No. 91-1 at 19.  This distinction may be of great import where the actual procedures, such as those raised in Plaintiff's unexhausted Insufficient Process claim, are at issue.  *Compare Lewis*, 2021 WL 4477392, at *11 (holding that when an inmate, or pretrial detainee, is isolated for administrative purposes, only "'an informal, nonadversary evidentiary review' is required 'for the decision that an inmate represents a security threat'" (citing *Hewitt*, 459 U.S. at 476)), *with Wolff v. McDonnell*, 418 U.S. 539 (1974) (holding that an inmate facing disciplinary proceedings is entitled to advance written notice of the charges, a hearing that affords a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken).

15

Here, however, the Court must examine the evidentiary standard employed at the hearing, not the procedures used before and during the hearing.

The Supreme Court has made clear that, in order to "meet the minimum requirements of procedural due process," a prison hearing officer's findings must be supported by "some evidence." *Superintendent*, 472 U.S. at 454; *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (applying the "some evidence" standard to an administrative proceeding). This standard is very lenient, as "any evidence in the record that could support the conclusion" reached by the decisionmaker will suffice. *Superintendent*, 472 U.S. at 455–56. In so holding, the Supreme Court acknowledged that "prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances," and noted that "[r]equiring a modicum of evidence to support a decision . . . will help to prevent deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455–56. At the same time, however, the standard is not meaningless and requires that the evidence be "reliable." *Luna v. Pico*, 356 F.3d 481, 491 (2d Cir. 2004).

The decision to designate Plaintiff as an SRG member was supported by some reliable evidence. First, Plaintiff admitted that the Facebook page, which contained the evidence used against him at the SRG designation hearing, belonged to him. Pl.'s L. R. 56(a)2 St. ¶ 10. Plaintiff admits that he listed his favorite quote as "it's a kold world blood . . . show no mercy." *Id.* ¶ 42. Plaintiff further admits that he shared a video that included the comment "when you not a real blood." *Id.* ¶ 43. This evidence, along with other evidence described above, was before Defendant McNeil at Plaintiff's hearing. McNeil was given copies of Plaintiff's Facebook records, and had that evidence in front of him at the hearing. *Id.* ¶ 50. Plaintiff raised no questions about the authenticity of the Facebook page, the comments, or the photographs, so the evidence was reliable

from an authentication perspective. McNeil reviewed those documents and heard from Plaintiff before forming an opinion as to whether Plaintiff was to be classified as an SRG member. *Id.* ¶¶ 54–55. While Plaintiff may disagree with the conclusions McNeil drew from this evidence, the standard requires only "some" evidence—meaning that, as long as it is reliable, truly "any evidence" would suffice. *See Superintendent*, 472 U.S. at 454. The evidence on which McNeil relied to form his conclusion that Plaintiff was an SRG member qualifies as some reliable evidence.

Plaintiff's argument that it violates due process for individuals to "ratify" the "bald conclusions of others," without "some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion," does not help him. ECF No. 98 at 19 (citing *Sira v. Morton*, 380 F.3d 57, 80 (2d Cir. 2004)). In *Sira*, the Second Circuit examined a hearing officer's reliance on the testimony of a confidential informant. 380 F.3d at 77. In that context, the Second Circuit held that "a hearing officer must make an independent assessment of informant credibility to ensure that disclosures qualify as some reliable evidence." *Id*. This rule, however, has not been extended to require a hearing officer to do any independent investigation when provided with reports from *other corrections officials*, as opposed to confidential informants. Indeed, correctional officers' reports have been deemed to meet the evidentiary threshold, both alone and in combination with other evidence. *See Muniz v. Cook*, No. 3:20-CV-1533 (MPS), 2021 WL 5919818, at *6 (D. Conn. Dec. 15, 2021) ("Courts have found that the issuance of a disciplinary report coupled with the inmate's testimony [is] sufficient to constitute 'some evidence.'"); *Chavez v. Gutwein*, No. 20-CV-342 (KMK), 2021 WL 4248917, at *12 (S.D.N.Y. Sept. 17, 2021) ("it is well-established that a correction officer's misbehavior report may constitute reliable evidence of guilt").

Further, as explained above, McNeil did not simply rely on the representations of Verdura that she had seen indicators of Bloods gang membership on Plaintiff's Facebook page; rather, Verdura produced the actual screen shots of the Facebook page, and McNeil examined them during the hearing, concluding that they demonstrated Plaintiff's membership in the SRG. It is not for the Court to "re-examine the entire record, make an independent assessment of witnesses, or reweigh the evidence. The court considers only whether there is any evidence in the record to support the decision." *Myers v. Semple*, No. 3:18-CV-505 (KAD), 2019 WL 5328692, at *9 (D. Conn. Oct. 21, 2019) (citing *Superintendent*, 472 U.S. at 455). Here, there was evidence in the record to support Defendant McNeil's finding. In fact, in a similar case, another court in this district found that where an inmate admitted to possessing a document containing SRG related material, this admission, coupled with the document, satisfied the "some evidence" standard with no further investigation necessary. *See Rooks v. Santiago*, No. 3:20-CV-299 (MPS), 2022 WL 561412, at *12 (D. Conn. Feb. 24, 2022). Thus, as Defendant McNeil reasonably relied on the evidence before him, including Plaintiff's admission that the Facebook page at issue, as well as the posts it contained, were made by Plaintiff, no reasonable jury could find that the decision to classify Plaintiff as belonging to an SRG was not based on *some* reliable evidence.

Despite this holding, the Court feels compelled to recognize notable gaps in the evidence used to designate Plaintiff as an SRG member. McNeil testified that he had no specific training on identifiers that would connect an inmate to an SRG. ECF No. 94-7 at 62:18–25. Although he "might have asked" someone at the facility about the significance of some of the language Plaintiff used on Facebook, such as the phrase "U B knowing," *id.* at 69:24–70:12, it is clear McNeil relied heavily on Verdura's assessment that the Facebook material rendered Plaintiff an SRG member. But McNeil appears to have had no specific information before him from Verdura or any other

source regarding *why* the alleged evidence that did not explicitly contain the word "blood" demonstrated Plaintiff's affiliation with an SRG. Nor was McNeil in possession of any information regarding Verdura's qualifications to determine Plaintiff was affiliated with an SRG, such as training she received about SRG identifiers, or the level of experience she had with making such conclusions. Plaintiff disputed that the information on his Facebook page demonstrated his membership in an SRG. Were the Court able to independently weigh the evidence presented to McNeil to determine if such evidence established Plaintiff's membership in an SRG, it is possible that the outcome of this matter would be different. But, as discussed above, the Supreme Court has been clear that the threshold of evidence required in this type of hearing is merely a "modicum," and a court is not to reweigh that evidence upon the filing of a federal lawsuit. *Superintendent*, 472 U.S. at 455. In accordance with these standards, the Court must only examine if there was some reliable evidence in the record that supports Defendant McNeil's determination. Here, such evidence is present.

Accordingly, Plaintiff's fully-exhausted claim regarding the sufficiency of the evidence supporting the SRG designation hearing fails, and Defendants are entitled to summary judgment as a matter of law.[7]

## V.    CONCLUSION

For the reasons described herein, Defendants' motion for summary judgment is GRANTED. The Clerk is directed to close this case.

---

[7] As the Court has determined that no constitutional violation took place, such that Defendants are entitled to summary judgment on the merits, the Court will not address Defendants' alternative argument that they are protected by the doctrine of qualified immunity.

**SO ORDERED** at Hartford, Connecticut, this 21st day of December, 2022.

                              /s/ *Sarala V. Nagala*  
                              SARALA V. NAGALA  
                              UNITED STATES DISTRICT JUDGE